# COMPLAINT

### (for filers who are prisoners without lawyers)

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2017 DEC -7 P 3: 55

DRIES
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

(Full name of plaintiff(s))

Brian DeMarco

Mitchell

_____

v.

(Full name of defendant(s))

Jeff Miller

Stephen Matthew McQuaid

Jim Wall

Jonathan Cvengros

Case Number:

## 17-C-1707

(to be supplied by Clerk of Court)

## A. PARTIES

1. Plaintiff is a citizen of Wisconsin , and is located at
(State)

Outagamie County Jail, P.O. Box 1779 Appleton, WI 54912
(Address of prison or jail)

(If more than one plaintiff is filing, use another piece of paper.)

2. Defendant Jeff Miller, Jim Wall, Jonathan Cvengros
Stephen Matthew McQuaid (Name)

Complaint – 1

is (if a person or private corporation) a citizen of  Wisconsin
                                                              (State, if known)
and (if a person) resides at _____
                                                              (Address, if known)
and (if the defendant harmed you while doing the defendant's job)

worked for Outagamie Sheriffs department, Appleton Police department
                County                   (Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B.     STATEMENT OF CLAIM

       On the space provided on the following pages, tell:
       1.     Who violated your rights;
       2.     What each defendant did;
       3.     When they did it;
       4.     Where it happened; and
       5.     Why they did it, if you know.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Complaint – 2

Complaint – 3

# Complaint

**On April 20<sup>th 2016</sup>**, Brian Mitchell ▮▮ 1989 gave Ms. Laquita M. Blackmer ▮▮ 1989 a ride as a favor to friend to her suspected friends house in the city of Appleton Wisconsin at 312 east Coolidge Street. During the travel to Ms. Blackmer's destination Ms. Blackmer was engaging in a text message conversation on a cellular phone in her possession, upon arrival to Ms. Blackmer's destination she made a phone call and stated that she had arrived and ended the phone call, she then proceeded to exit Mr. Mitchell's vehicle, Mr. Mitchell then proceeded to leave. After being numerous city streets away from the location that Ms. Blackmer was now at Mr. Mitchell then noticed that Ms. Blackmer had left items in his vehicle, he then turned his vehicle around and proceeded to return the items. Upon returning to the City Street in which he had dropped Ms. Blackmer off at Mr. Mitchell became unsure at which residence she had entered, he then parked his vehicle in front of a random residence that was not 312 east Coolidge street and for the next 3 to 5 minutes scrolled through his personal cellular phone for a phone number in which to contact Ms. Blackmer at to engage in returning her items. In this instance Mr. Mitchell was approached at his driver side window of the vehicle at gunpoint by Stephen Matthew McQuaid of the Appleton Police Department Community Resource Unit (C.R.U.), when approached Officer McQuaid was wearing plain clothing and not a police officer uniform. Officer McQuaid tapped the window of the vehicle, Mr. Mitchell then cracked the window, Officer McQuaid then stated that he was a police officer and ordered Mr. Mitchell to exit the vehicle. Mr.Mitchell complied and did so; he was then immediately placed into handcuffs by Officer McQuaid and then taken out of the city street onto the sidewalk. At this point in the April 20th 2016 occurrence Mr. Mitchell had done nothing to demonstrate to the police officer that approached his vehicle to establish probable cause or reasonable suspicion of physical danger to himself or to others, a traffic violation and or criminal activity. Mr. Mitchell was now seized and was not free to leave. A police officer is allowed to approach a person for certain basic purposes and to ask for identification, but if the officer does not have evidence or strong suspicion of criminal activity the officer cannot detain or arrest such person. Mr. Mitchell contest that Officer Stephen Matthew McQuaid violated Wisconsin statue 968.24 Temporary question without arrest. Mr. Mitchell also contest that this was a violation of his 4th United States Constitutional right to be free from unreasonable searches and seizures. Officer McQuaid did not ask Mr. Mitchell his purpose for being parked on the city street, his name or for identification before ordering him to exit the vehicle or restraining his liberty by placing him in handcuffs. The encounter between Mr. Mitchell and Officer McQuaid was captured recorded and documented by a body camera device and will be presented in this matter.

Officer McQuaid then turned Mr. Mitchell over to Officer Jim Wall of the Outagamie County Sherriff's Department (C.R.U.) who came from the inside of residence 312 east Coolidge street. Officer Wall then took Mr. Mitchell out of the vicinity where he was stopped houses away into

a residence on that same city street that the Community Resource Unit was using for an undercover prostitution sting 312 east Coolidge Street. Mr. Mitchell would then remain detained at this residence for 45 minutes to 1 hour after being taken inside. While detained inside the location Mr. Mitchell was then searched and identified by his Wisconsin State Identification Card that was located inside his wallet in his pants pocket. After approximately 7 minutes of being detained Officer Jim Wall attempted to obtain a statement from Mr. Mitchell while Mr. Mitchell was handcuffed sitting on a toilet in a bathroom inside the location where he would remain for the remaining detention. Mr. Mitchell declined and did not waive his Miranda rights. Mr. Mitchell should have then been released, because he was not indicated or implicated in the commission of a crime or violation of the law, he was told he was being detained as a part of a prostitution investigation and that Ms. Blackmer the woman who he had dropped off was being spoken to regarding her activity.

Prior to Mr. Mitchell being taken inside the undercover residence via body camera device an interview was being recorded and conducted by Officer Jonathan Cvengros of Ms. Laquita Blackmer. The duration of this recorded interview is about 46 minutes and will be presented in this matter. Very early in the first 10 minutes of her interview Ms. Blackmer reported to Jonathan Cvengros of the Outagamie County Sheriff's Department (C.R.U.) that Mr. Mitchell the person who drove her there was in no way involved in her business or activities that night and that Mr. Mitchell was just a friend who gave her the ride. Officer Cvengros failed to share this information to the other officers of the (C.R.U.) also Officer Jim Wall the sole Officer guarding the detention of Mr. Mitchell in the bathroom. The failure of Officer Jonathan Cvengros to do so resulted in an illegal yet excessive detention of Mr. Mitchell. Thus the collective information rule does not apply to justify the detention of Mr. Mitchell see State v. Black,( app.2000 ),617 N.W.2d 210,238 Wis.2d 203

On April 20th 2016 Lieutenant Jeff Miller of the Appleton Police Department and Outagamie Sherriff's Department (C.R.U.) was the supervisor in responsibility of the (C.R.U). Lieutenant Jeff Miller failed to diligently pursue or give direction to pursue the means of the investigation that was likely to confirm or dispel their suspicions quickly see State v. Quartana, (app 1997)570 N.W.2d 618,213 Wis. 2d 440.

On April 20th 2016 Lieutenant Jeff Miller was the officer of the (C.R.U.) that had all of the communication with Ms. Laquita Blackmer via recorded phone call and recorded text conversation. The communication that Lieutenant Jeff Miller had with Ms. Blackmer does not reveal what form of transportation MS. Blackmer would arrive in, be it taxi cab, public transit or by simply walking to the undercover location, neither does the communication reveal that she would be arriving alone or to be dropped off by someone or Mr. Mitchell. The communication does not reveal that there was any sort of anticipation for a crime or act of prostitution to

occur, neither that anything in violation of the law was to occur once she arrived at the location 312 east Coolidge Street. On April 20th 2016 Ms. Blackmer did not involve nor indicates Mr. Mitchell in her communication with Lieutenant Jeff Miller, neither did Lieutenant Jeff Miller inquire of any unexpected circumstances. The records of the communication between Ms. Balckmer and Lieutenant Jeff Miller will be presented in this matter. Upon Ms. Blackmer being dropped off by Mr. Mitchell Lieutenant Jeff Miller radio communicated to Officer Stephen Matthew McQuaid and directed him to attempt to get a traffic stop on the vehicle that dropped off Blackmer and identify the occupants. This directive was not supported by any specific articulated facts or suspicion known to Lieutenant Jeff Miller. There is a body camera video footage from 04/20/16 of the "Officers" looking outside of the window from the undercover location spotting the vehicle of Mr. Mitchell parked on the same exact street and identifying the vehicle as "unknown vehicle" as it had attempted to re-arrive to where Ms. Blackmer was located, a directive is then given to identify the unknown vehicle, Mr. Mitchell's vehicle is then approached by Officer Stephen Matthew McQuaid. This directive by Lieutenant Jeff Miller was the direct cause of the encounter and illegal seizure of Mr. Mitchell by Officer Stephen Matthew McQuaid. Mr. Mitchell contest there was no probable cause to be approached yet removed from his vehicle seized and involved in the Community Resource Units Sting operation on April 20th 2016, because it was entirely legal for him to give Ms. Blackmer a ride in his vehicle to her presented destination and that no violation of the law had occurred or had been revealed as anticipated at the time that she exited his vehicle.

The video footage of Mr. Mitchell's detention will be presented in this matter. Mr. Mitchell was released after 45 minutes to 1 hour of being illegally seized and perhaps "kidnapped" because there was no factual basis to detain him. Because Lieutenant Jeff Miller directed Officer Stephen Matthew McQuaid to attempt to get a traffic stop on his vehicle without proper probable cause he was approached when he parked his vehicle and ultimately illegally seized, Officer Stephen Matthew McQuaid then turned Mr. Mitchell's seized body over to Officer Jim Wall who took him from the vicinity of the encounter, he searched and then identified Mr. Mitchell by his Wisconsin Identification Card. While seized Officer Jonathan Cvengros failed to notify the other Officers that Ms. Laquita Blackmer had verified that Mr. Mitchell was not involved in anything more than a friend that had agreed to give her a free ride to the location she presented and was not involved in any suspicious activity. Officer Jonathan Cvengros's failure to constructively communicate, Lieutenant Jeff Millers Failure to direct as supervisor to diligently pursue the means to dispel any incorrect suspicion was a direct cause of the excessive detention, yet while Mr. Mitchell contest the detention and seizure was unlawful and unreasonable itself, because Lieutenant Jeff Miller had no known specific facts surrounding the circumstances that Ms. Blackmer was being dropped off to his location by someone and if that someone was in anyway involved in or aware of her activities or intentions.

Because Mr. Mitchell was identified on April 20th 2016 by his Wisconsin State identification card the Outagamie Sherriff's department and Appleton Police Departments Community Resource Unit (C.R.U.) was now aware of his authentic identity. On April 20th 2016 Ms. Laquita Blackmer did not disclose any name for Mr. Mitchell and was unaware of his government name. On January 19th 2017 Outagamie county District Attorney's Office filed a criminal complaint naming Brian Mitchell as the defendant for a charge for a Human Trafficking offense occurring on April 20th 2016 case no. 17-CF-59 Outagamie County. Mr. Mitchell was arrested on this charge and now warrant for his arrest on March 27th 2017 in an unrelated traffic stop for speeding in Racine County Wisconsin. Mr. Mitchell has been now detained and incarcerated as a direct result of the filed charges for Human Trafficking from March 27th 2017 to this current day, the charges for Human Trafficking were dismissed By the Outagamie County Circuit Court on September 14th 2017. Mr. Mitchell contest that if he was not unreasonably approached, illegally seized and arrested, illegally identified and unreasonably involved in the Outagamie County Sheriff's Department and Appleton Police Departments. (C.R.U.) prostitution sting on April 20th 2016 he would not have been subject to charges of Human Trafficking, never arrested and currently detained in the Outagamie County Jail.

Mr. Mitchell asks the court to rule on the following:

# 1. If there was probable cause or reasonable suspicion on April 20th 2016 for Lieutenant Miller to direct an approach or search and seizure on Mr. Mitchell on the basis of his presence on the public premises alone.

# 2. Whether the specific and articulable facts known to Lieutenant Jeff Miller prior to directing Officer Stephen Matthew McQuaid to approach, stop yet seize Mr. Mitchell gave rise to reasonable suspicion.

* Facts known to Lieutenant Jeff Miller prior to the stop

* Laquita Blackmer had not agreed to engage or attempted to engage in any violation of the law, or criminal activity, the communication does not reveal any anticipation to violate the law

* Lieutenant Jeff Miller had not inquired with Ms. Blackmer about what form of transportation she would have when arriving, be it Uber driver, private service driver, public transportation or taxi cab

* Lieutenant Jeff Miller had not inquired with Ms. Blackmer through the communication concerning if she was or would be arriving alone, and if not if the person would be in some way aware or involved in her activities that night.

\* Lieutenant Jeff Miller had not established through the communication, that any scheme, plan or anticipation for criminal activity was to occur prior to Ms. Blackmer arriving and exiting Mr. Mitchell's vehicle

# 3. Whether the contact with Mr. Mitchell by the "defendants" on April 20th 2016 exceeded the bounds of the Terry Stop standard.

# 4. Whether the degree of intrusion was reasonably related to the known facts

\* Degree of Intrusion:

\* Mr. Mitchell was parked legally safe and secure within his property, he was approached at gun point, immediately directed to exit his vehicle, immediately placed in handcuffs then taken out of the vicinity of the stop into an undercover location to a bathroom, he refused to waive his Miranda warning rights remained handcuffed sitting on a toilet in a bathroom for 1 hour and was then released, because there was no factual basis in which to detain or further arrest him.

# 5. Whether there was reckless disregard of Mr. Mitchell's legal rights that constituted malice and wrongful intention, the malice intention to make an arrest or false arrest.

# 6. Whether there was unreasonable restraint of Mr. Mitchells liberty following the arrest or detention or if the probable cause determination was delayed unreasonably, for delays sake, for the purpose of gathering additional evidence to justify the arrest or detention or there was delay 𝟏 motivated by ill will against Mr. Mitchell based on the evidence that will be presented in this matter.


Mr. Mitchell seeks Relief and damages for all the above reasons in the complaint. All audio and video recordings in this matter will be presented in this matter. All court transcript testimony and documents from 17-CF-059 discovery will be presented in this matter.

Brian Mitchell : Brian Mitchell

This 30th day OF November 2017

## C. JURISDICTION

☒ I am suing for a violation of federal law under 28 U.S.C. § 1331.

OR

☐ I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $_____.

## D. RELIEF WANTED

Describe what you want the Court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or to stop doing something.

I am asking the Court to Award the Following: $2,000,000 in Consequential and Compesatory Damages $500,000 in mental, emottonal and pain and suffering, $2,000 for each day Jail time served as unlawful, $700,000 in punittive damages, and Awarded All legal Cost connected in this matter I am asking in addittion the Court to order defendants to return all and any property Seized from my person or Vehicle on 04·20·16

Complaint – 4

E.   JURY DEMAND

I want a jury to hear my case.

☒ – YES          ☐ – NO

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this __30th__ day of __November__ 20 __17__.

Respectfully Submitted,

_Quin M futhell_

Signature of Plaintiff

_134456_

Plaintiff's Prisoner ID Number

_Outagamie County Jail PO.Box 1779, Appleton, WI, 54912_

(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper.)

## REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FULL FILING FEE

☒  I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a Request to Proceed in District Court without Prepaying the Full Filing Fee form and have attached it to the complaint.

☐  I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.

Complaint – 5