# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRIAN DEMARCO MITCHELL,<br><br>                Plaintiff,<br><br>v.<br><br>JEFF MILLER, STEPHEN MATTHEW MCQUAID, JIM WALL, and JONATHAN CVENGROS,<br><br>                Defendants. | Case No. 17-CV-1707-JPS<br><br>**ORDER** |

Plaintiff, who was formerly imprisoned in the Wisconsin prison system, was allowed to proceed on a claim of violations of his Fourth Amendment rights against the Defendants, who are law enforcement officers. (Docket #10 at 3–4). Plaintiff alleged that he was arrested by Defendants as part of a prostitution sting, but that Defendants lacked reasonable suspicion to initially detain him or probable cause to arrest him. *Id.* All parties have filed motions for summary judgment.

Plaintiff's motion was filed on October 4, 2018, (Docket #50), and Defendants' motions were filed on November 1, 2018, (Docket #53 and #60). Along with their motions, Defendants filed a joint statement of proposed findings of fact. (Docket #58). According to that statement, Defendants were indeed engaged in a prostitution sting operation. In this instance, the sting targeted a woman, Laquita Blackmer ("Blackmer"), who was a suspected prostitute. The officers hoped to lure Blackmer to meet with them so they could determine who was trafficking her, or in more common parlance, who her pimp was.

On April 20, 2016, Blackmer arrived at the officers' undercover residence in a vehicle driven by Plaintiff. Defendants followed Plaintiff, who drove around the block and then back towards the sting location, where he then parked. They approached Plaintiff's vehicle and spoke with him for a time. They then detained Plaintiff and placed him in handcuffs, based on their experience that individuals involved in sex trafficking are often armed. Plaintiff was searched, led into the house, and read his *Miranda* rights. The handcuffs were taken off about thirty minutes later.

Defendants simultaneously arrested, and then interviewed, Blackmer. She admitted that she had come to the house intending to prostitute herself. Blackmer was quite nervous when the conversation turned to Plaintiff, stating that he was just a friend dropping her off. Blackmer fearfully asked officers whether Plaintiff was nearby or could hear them speaking. She later stated that she was afraid that Plaintiff would hurt her. The officers also located a few identical phones on Blackmer and in the car. This behavior is consistent with a pimp owning several phones for his girls to use, so that he could be in control of their conversations with the clients. Eventually, Blackmer stated outright that Plaintiff had recruited her to be a prostitute for him.

In light of these facts, Defendants had probable cause to arrest Plaintiff at least for being an accomplice to the crime of prostitution, if not additional and far more serious human trafficking offenses. Plaintiff was nevertheless interviewed and released that night, after being detained for about an hour. Later, Plaintiff was charged with human trafficking in state court. At Plaintiff's preliminary hearing, the judge found probable cause existed to arrest Plaintiff for human trafficking based on the facts recounted above.

Defendants argue that these facts warrant judgment in their favor, both on the issue of Plaintiff's stop and his arrest. All persons enjoy the Fourth Amendment's right to be free from unreasonable seizures, including warrantless arrests. Nevertheless, *Terry v. Ohio*, 392 U.S. 1 (1968), permits police officers to detain persons whom they reasonably suspect are engaged in criminal activity. Such investigatory stops are proper "if the officer making the stop is able to point to specific and articulable facts that give rise to a reasonable suspicion of criminal activity." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) (quotation omitted). "When determining if seizure exceeds the bounds of *Terry*, the court should ask: (1) whether the police were aware of specific and articulable facts giving rise to reasonable suspicion; and (2) whether the degree of intrusion was reasonably related to the known facts." *Id.* (quotation omitted).

Courts assessing a Fourth Amendment claim related to a *Terry* stop must "examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *Id.* The threshold for reasonable suspicion to justify a *Terry* stop is low; "[i]t requires more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Id.* (quotation omitted). Here, the evidence before Defendants easily supported a reasonable suspicion that Plaintiff was engaged in crime. Defendants had engaged Blackmer unmistakably for the purpose of prostitution. Plaintiff was observed dropping off her off at the sting location designated for the commission of the crime. He then circled back to the area after briefly driving away.

Defendants' actions also did not go beyond the bounds of a permissible *Terry* stop. Such stops generally involve an interview and may

include handcuffing if appropriate for the officers' safety. Based on Defendants' experience with these types of crimes, their decisions to handcuff Plaintiff for a limited time and to conduct a pat-down search were reasonable. Plaintiff was detained for just under an hour before being released. The degree of intrusion on Plaintiff's affairs was low, particularly in light of the damning statements made by Blackmer.

Plaintiff maintains that his detention went beyond a mere *Terry* stop to a full-blown arrest. If true, Defendants would need to demonstrate that they had probable cause to suspect that Plaintiff had committed a crime. *United States v. Paige*, 870 F.3d 693, 699 (7th Cir. 2017) ("A warrantless arrest is constitutionally permissible if supported by probable cause.") (quotation omitted). As with reasonable suspicion, the test for probable cause examines "the totality of the facts and circumstances known to the officer at the time of the arrest" to determine whether "a reasonable, prudent person [would believe] that the arrestee had committed, was committing, or was about to commit a crime." *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015).

Defendants half-heartedly dispute whether Plaintiff was indeed arrested, but they accurately note that even if this were true, they had probable cause for the arrest. All of the same evidence leading to Defendants' reasonable suspicion of Plaintiff's criminal activity also establishes probable cause for a number of crimes, including being a party to the crime of prostitution, and human trafficking. Additionally, the state court trial judge in Plaintiff's criminal case found probable cause on these facts. Because "[p]robable cause is an absolute defense to a claim of wrongful arrest," Plaintiff's claim related to his arrest fails. *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008).

Plaintiff responded to Defendants' motions on November 19, 2018. His responsive materials consisted of a letter to the Court about his filings, (Docket #68), a brief in opposition to Defendants' motions, (Docket #69), and an affidavit, (Docket #70). Nowhere in Plaintiff's submissions, however, is a response to Defendants' statement of facts that complies with the applicable procedural rules. Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper summary judgment submission. In particular, they state that a party opposing a summary judgment motion must file

> (B) a concise response to the moving party's statement of facts that must contain:
>
> (i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]

Civ. L. R. 56(b)(2)(B)(i); *see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record[.]").

Rather than comply with these rules, Plaintiff simply offers a number of factual assertions in his legal brief and some statements in his affidavit.[1] This is unacceptable and fails to appropriately dispute Defendants' assertions of fact. Plaintiff's failure is inexcusable, in light of the fact that he was provided copies of the applicable procedural rules by the Court, (Docket #27), and by Defendants along with their summary

---

[1]The affidavit is largely unhelpful, in any event. It is mostly comprised of statements constituting legal conclusions, as opposed to actual facts. *See, e.g.*, (Docket #70 at 2) ("On April 20th 2016, I [Plaintiff] was not party to a crime of prostitution, and to my knowledge a crime of prostitution never occurred.").

judgment motions, (Docket #53 and #60-1). Indeed, Defendants' response to Plaintiff's own statement of facts in connection with his motion for summary judgment provided him a ready example of how such a response should be presented. (Docket #59).

Plaintiff nevertheless ignored the applicable rules of procedure at his own peril. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Even if such relevant and favorable evidence could be located in the record, the Court cannot compile that evidence for him and construct legal or factual arguments on his behalf. In other words, the Court cannot abandon its role as a neutral decisionmaker and become an advocate for one party. Thus, the Court deems Defendants' facts undisputed for purposes of deciding their motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

Based on the undisputed facts presented by Defendants, summary judgment is clearly appropriate in their favor. Plaintiff offers arguments against this result in his legal brief, but all lack merit. First, Plaintiff emphasizes that he was arrested, not merely stopped, by Defendants. As the Court has explained, this is immaterial, as both an arrest and a stop were justified under the circumstances.

Second, Plaintiff contends that merely being the driver of the car which dropped off Blackmer did not supply probable cause to arrest him. Perhaps, but in light of the other circumstances presented to Defendants, they were justified in arresting Plaintiff. These circumstances included that

Plaintiff suspiciously left the scene for a moment and then returned after Blackmer went inside.[2]

Third, Plaintiff suggests that the Court must parse each Defendant's knowledge and experience separately in order to assess whether probable cause existed. This is untrue. The collective knowledge doctrine allows the Court to combine the observations of the arresting officers, with the experience in prostitution crimes possessed by all of the officers present, as well as the buildup of the sting operation to the night of April 20, 2016, to conclude that probable cause existed to arrest Plaintiff for one of a number of potential prostitution-related crimes. *U.S. v. Williams*, 627 F.3d 247, 252–56 (7th Cir. 2010).

Fourth, Plaintiff insists that he did not commit any particular crime by analyzing the specific elements of multiple crimes compared to his behavior that night. In other words, Plaintiff challenges Defendants to *prove* that he committed the crimes that they believed he was committing. But whether he actually committed a crime is irrelevant. Probable cause is not a demanding standard, requiring only that the officers reasonably believed that a crime might have occurred, not that one actually occurred. *Sands*, 815 F.3d at 1062. Indeed, the standard is less than a preponderance of the evidence, meaning that Defendants did not have to be more than fifty percent sure that Plaintiff had committed a crime. *Bullock*, 632 F.3d at 1012. Defendants easily cleared that hurdle in this case.

---

[2]Plaintiff objects to the inclusion of Blackmer's statements as part of the facts attributable to a finding of probable cause. While it is unclear precisely when Plaintiff's detention transformed from a stop to an arrest, it is unimportant on the undisputed facts of this case. The officers had probable cause to arrest Plaintiff at the moment they stopped him.

In light of the foregoing, the Court will dismiss both of Plaintiff's Fourth Amendment claims, and this action generally, with prejudice. Plaintiff's motion for summary judgment will be denied as moot, as will a prior motion by Plaintiff relating to a discovery dispute. (Docket #40).

Accordingly,

**IT IS ORDERED** that Defendants' motions for summary judgment (Docket #53 and #60) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket #50) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel (Docket #40) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of August, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge